UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN SAMUELS,

                Plaintiff,

      -against-

BARNARD COLLEGE COLUMBIA UNIVERSITY,

                Defendant.

1:23-CV-6181 (LTS)

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff Justin Samuels, who currently resides in Barreiro, Portugal, and who is appearing *pro se*, filed this action asserting that he has been discriminated against by Columbia University's Barnard College. He seeks injunctive relief, declaratory relief, and damages. The Court construes Plaintiff's complaint and supplements as asserting claims of federal constitutional violations under 42 U.S.C. § 1983, claims of discrimination and retaliation under Titles VI and IX of the federal Civil Rights Act of 1964 ("Title VI" and "Title IX," respectively), as well as claims under state law.[1]

    By order dated July 19, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

---

[1] On July 19, 2023, after he had filed his complaint two days earlier, Plaintiff filed a letter. (ECF 4.) On September 18, 2023, he filed another letter. (ECF 6.) He filed yet another letter on October 5, 2023. (ECF 7.) The Court construes those letters as supplements to his complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine

whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff's complaint (ECF 1) and supplements (ECF 4, 6, & 7) are all written as letters to the court. In his complaint, Plaintiff informs the court that he is "writing to initiate legal proceedings against Barnard College, an institution affiliated with Columbia University, for sex discrimination, legacy admissions, and violations of the [E]qual [P]rotection [C]lause, all of which have significantly harmed [him]. . . ." (ECF 1, at 1.) He asserts that "Barnard College employs legacy admissions, granting preferential treatment to applicants based on their family ties to the institution. This practice unfairly advantages individuals whose parents previously attended the college, and this group, predominantly composed of white students, enjoys a higher acceptance rate than others." (*Id.*) He also asserts that "[l]egacy admissions perpetuate racial inequality." (*Id.*) Plaintiff further alleges that "Barnard College admits students based on parents' financial contributions, allowing wealthy families to exert undue influence over the admissions process. This practice . . . effectively creates a two-tiered system where students' chances of admission depend on their parents' financial status rather than their merit or qualifications." (*Id.*) "Barnard College's discriminatory practices . . . extend to men and individuals identifying as male. . . ." (*Id.* at 2.)

In his first supplement, Plaintiff describes himself as a gay Black male. (ECF 4, at 1.) He alleges that between 2015 and 2017, he attended Columbia University's Teachers College, where he pursued and earned a master's degree in English education. (*Id.*) He also alleges that after he obtained his master's degree, he aspired "to further [his] education and artistic pursuits at the Athena Film Festival, a prestigious program hosted by Barnard College as part of Columbia University. As a male screenwriter, [he] sought to contribute [his] creativity and skills to the

3

festival, which celebrates women's leadership and representation in the film industry." (*Id.*) Plaintiff further alleges that "Barnard College[,] [however,] enforced a policy that denied admission to male participants in the Athena Film Festival." (*Id.*) He has attached to his second supplement a copy of an email from the festival rejecting his script "Down Skid Row." (ECF 6-3, at 1.) He asserts that his script was rejected by the festival on August 18, 2023. (ECF 6, at 1.)

Plaintiff has also attached to his complaint a copy of June 24, 2023 letter to him from the United States Department of Education's Office for Civil Rights ("OCR"). (ECF 1-11, at 1-4.) In that letter, the OCR acknowledged that Plaintiff had previously filed a complaint with that office asserting the following allegations for which that office carried out an investigation: (1) Barnard College "discriminates on the basis of sex by offering opportunities and resources only for women in its Athena Center for Leadership Incubator (the Incubator)"; (2) Barnard College "discriminated on the bases of race or color . . . , national origin . . . , and sex . . .  by waiving the $14 fee for submitting short films to the 2023 Athena Film Festival (the Festival), for Black and Indigenous Women of Color . . . filmmakers, between June and August 2022"; and (3) Barnard College "discriminated on the basis of sex by admitting only women and non-binary applicants to the Festival's Writers Lab (the Writers Lab) in November 2022 and March 2023[.]" (*Id.* at 1.)

The OCR informed Plaintiff that Barnard College had "modified the Incubator's website to reflect that applications are not restricted by sex and are open to '[a]spiring and emerging [College] student entrepreneurs ready to take their venture to the next level.'" (*Id.* at 2) (alterations in original, footnote omitted). The OCR thus regarded Plaintiff's allegation regarding the Incubator as resolved. (*Id.*)

The OCR also stated that Barnard College had stated that the festival grants waivers of the relevant submission fee "to everyone who makes a request, and that fee waivers for short

4

films submitted to the 2023 Festival between June and August 2022 were available to, and granted to any individual who made a request, regardless of that individual's race or color, national origin or sex." (*Id.*) The OCR "confirmed that [Barnard] College granted fee waivers to all 143 applications who requested a waiver" and that "the Festival modified its webpage to reflect the availability of fee waivers regardless of race or color, national origin, or sex." (*Id.*) Accordingly, the OCR deemed Plaintiff's allegation regarding the fee waiver resolved. (*Id.* at 3.)

The OCR further stated that Barnard College had informed the OCR that the Writers Lab "is open to script writers without regard to sex; and that the Festival modified its webpage, including language relating to eligibility." (*Id.*) "The Festival webpage states that it 'encourages applications from people of all races, religions, national origins, sexual orientations, gender identities, gender expressions, and ages, as well as veterans and individuals with disabilities.'" (*Id.*) (footnote omitted). The OCR therefore deemed Plaintiff's allegation regarding the Writers Lab as resolved and, having resolved all of Plaintiff's allegations, the OCR closed the matter. (*Id.*)

Plaintiff has attached to his third supplement a copy of a letter from the OCR, dated October 5, 2023, in which it stated that on August 21, 2023, Plaintiff filed a complaint with the OCR asserting that Barnard College had retaliated against him for his "sex- and race-based advocacy by rejecting [Plaintiff's] submission to the 2023 Athena Film Festival on August 18, 2023." (ECF 7-1, at 1.) The letter also stated that the OCR is opening an investigation regarding the alleged retaliation.

5

In his complaint, Plaintiff seeks the following as relief:

(a) [a] declaration that Barnard College's legacy admissions and monetary influence in admissions violate the Equal Protection Clause and federal laws[;]
(b) [a]n injunction to immediately cease legacy admissions and monetary influence in admissions practices[;]
(c) [a]n order for Barnard College to implement anonymous admissions, identifying applicants solely by numbers to eliminate biases in [its] admissions process[;]
(d) [c]ompensation for the harm and damage caused by Barnard College's discriminatory practices[;]
(e) [a]ny other relief deemed just and appropriate by this honorable court.

## DISCUSSION

**A.     Constitutional claims under 42 U.S.C. § 1983**

The Court must dismiss Plaintiff's claims of federal constitutional violations under 42 U.S.C. § 1983. To state a claim on which relief can be granted under that statute, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). "The traditional definition of acting under color of state law requires that the defendant . . . exercise[] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49 (internal quotation marks and citation omitted). "Because the United States Constitution regulates only the Government, not private parties, [with respect to a claim brought under Section 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted). Private parties generally are not state actors, and therefore are not usually liable under Section 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

6

Plaintiff asserts claims against Barnard College and, possibly, Columbia University. Both are private institutions, and Plaintiff does not allege any facts that show that either of those institutions was acting under color of state law when it allegedly injured him. Thus, neither of those institutions appears to have been a state actor when it allegedly injured him. The Court therefore dismisses Plaintiff's claims of federal constitutional violations under Section 1983 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.     Claims under Title VI and Title IX**

Plaintiff's complaint and its supplements do not allege facts sufficient to show that Plaintiff has standing to assert his claims under Title VI and Title IX. "Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664 (2d Cir. 2012) (citing 42 U.S.C. § 2000d, footnote omitted). "Title IX broadly prohibits education programs that receive federal funding from discriminating 'on the basis of sex.'" *Soule by Stanescu v. Conn. Ass'n of Schs., Inc.*, 57 F. 4th 43, 54 (2d Cir. 2022) (quoting 20 U.S.C. § 1681(a)). Article III, Section 2, of the Constitution, however, limits the jurisdiction of the federal courts "to the resolution of cases and controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation and internal quotation marks omitted). "Standing to sue or defend is an aspect of the case-or-controversy requirement." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). To demonstrate standing, a plaintiff must show that: (1) he has personally suffered some actual or threatened injury as a result of the defendant's alleged illegal conduct; (2) the injury is fairly traceable to the defendant's conduct; and (3) the injury is likely to be redressed by the requested relief. *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). The burden of establishing standing to sue rests with the party bringing the action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, "a

7

generalized grievance, no matter how sincere, is insufficient to confer standing. A litigant . . . claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large . . . does not state an Article III case or controversy." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (internal quotation marks and citation omitted)."'If [a] plaintiff[] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim.'" *Mahon*, 683 F.3d at 62 (internal quotation marks and citation omitted); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("Subject-matter jurisdiction . . . is an Art. III as well as a statutory requirement . . . .").

Plaintiff, in his complaint and in his first supplement, decries Barnard College's admission policies and seeks relief regarding those policies, though he alleges no facts showing that he himself will be or has been injured by those policies – he does not allege that he will apply or has ever applied for admission to Barnard College and that his application will likely be or has already been denied because of those policies.[2] Thus, because Plaintiff does not allege facts showing how Barnard College's admission policies will injure or has injured him, and how the relief he requests will redress those possible or actual injuries, Plaintiff's claims regarding those admission policies suggest that they are merely generalized grievances, which do not establish standing. *See Hollingsworth*, 570 U.S. at 706. Accordingly, to the extent that Plaintiff asserts claims under Title VI or Title IX, arising from Barnard College's admission policies, the Court dismisses them for lack of standing and, consequently, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Mahon*, 683 F.3d at 62.

---

[2] On the contrary, he alleges that Columbia University admitted him to its Teachers College, and that he earned a master's degree from that institution.

Separate from Barnard College's admission policies, however, Plaintiff's allegations in his complaint and second supplement, as well as those arising from the contents of the OCR letters attached to the complaint and third supplement, suggest that Barnard College directly discriminated against Plaintiff, before and/or after the OCR's first investigation mentioned above, in the following manner: Barnard College (1) did not accept, from males, submissions for its Athena Film Festival; (2) it did not allow male participation in the abovementioned Leadership Incubator; (3) it discriminated against individuals, on the bases of their race, color, national origin, and/or sex, with regard to waivers of the film festival's submission fee; and/or (4) it did not accept, from males, applications for the festival's Writers Lab. In addition, Plaintiff's third supplement suggests that Barnard College retaliated against him for his sex and race-based advocacy. Yet, the relief Plaintiff seeks in his complaint does not seem to attempt to redress any of the injuries that he may have suffered as a result of those alleged acts; the relief he seeks seems to attempt to redress alleged discrimination arising from Barnard College's admission policies. In addition, to the extent that Plaintiff does seek any injunctive relief with regard to any of the discriminatory acts alleged above regarding the film festival, because it appears that Barnard College has, post-OCR discrimination investigation, changed its conduct, it would appear that his claims for such relief from discrimination may be moot.

In light of Plaintiff's *pro se* status, the Court grants Plaintiff 60 days' leave to file an amended complaint in which he alleges facts showing that he has standing to assert claims of discrimination and/or retaliation under Title VI and/or Title IX against Barnard College and/or Columbia University as a whole. Plaintiff must show that: (1) he has personally suffered some actual or threatened injury as a result of Barnard College's and/or Columbia University's conduct; (2) that the injury is fairly traceable to either or both of those institutions' conduct; and

(3) that the injury is likely to be redressed by the relief requested in his amended complaint. *See Valley Forge Christian Coll.*, 454 U.S. at 472. Because Plaintiff's amended complaint will completely replace his original complaint and its supplements, Plaintiff will also have to allege facts in his amended complaint sufficient to state a claim of discrimination and/or retaliation under Title VI and/or Title IX.

With respect to both types of claims of discrimination, he must show that any defendant against which he brings such a claim in his amended complaint receives federal funding. *See Zeno*, 702 F.3d at 664 (citing 42 U.S.C. § 2000d) (Title VI); *Soule by Stanescu*, 57 F. 4th at 54 (quoting 20 U.S.C. § 1681(a)) (Title IX). As to a claim of discrimination under Title VI, to state such a claim, a plaintiff must also allege facts showing that: (1) the defendant discriminated against the plaintiff because of his race, color, or national origin; (2) that such discrimination was intentional; and (3) that the discrimination was a substantial or motivating factor for the defendant's actions. *See Tolbert v. Queens Coll*, 242 F.3d 58, 69 (2d Cir. 2001). As to a claim of discrimination under Title IX, "a plaintiff must [also] allege that []he has been excluded from participation in, . . . denied the benefits of, or . . . subjected to discrimination under any educational program . . . on the basis of gender." *Cianciotto ex rel. D.S. v. N.Y.C. Dep't of Educ.*, 600 F. Supp. 3d 434, 451 (S.D.N.Y. 2022) (internal quotation marks and citations omitted).

With respect to a claim of retaliation under Title VI, a plaintiff "must 'plausibly allege (1) participation in a protected activity known to the defendant[]; (2) adverse action by the defendant[] against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action.'" *Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018) (citation omitted, third alteration in original). In this context, "[a]n adverse action is one that 'would deter an individual of ordinary firmness, situated similarly' from

engaging in the protected activity." *Freckleton v. Mercy Coll. NY*, No. 22-CV-1985, 2023 WL 2648827, at *7 (S.D.N.Y. Mar. 27, 2023) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)). To state a claim of retaliation under Title IX, "a plaintiff . . . must . . . show[]: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011). "In the context of Title IX, an adverse action constitutes 'action of a nature that would deter a reasonable [person] from making or supporting a discrimination claim.'" *Doe v. Syracuse Univ.*, No. 5:21-CV-0977, 2022 WL 4094555, at *5 (N.D.N.Y. Sept. 7, 2022) (citation omitted), *appeal filed*, No. 22-2674 (2d Cir.).

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that federal district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim or discrimination and/or retaliation under Title VI and/or Title IX, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims as specified above.

Plaintiff is granted leave to amend his complaint to provide more facts about his claims. In the "Statement of Claim" section of the amended complaint, Plaintiff must provide a short and

plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that he wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint and its supplements, any facts or claims that Plaintiff wants to include from the original complaint and/or its supplements must be repeated in the amended complaint.

## CONCLUSION

The Court dismisses Plaintiff's claims of federal constitutional violations under 42 U.S.C. § 1983 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 1:23-CV-6181 (LTS). An Amended

Complaint form is attached to this order. No summonses will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will dismiss his remaining claims under Title VI and/or Title IX for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), and the Court will decline to consider, under its supplemental jurisdiction, Plaintiff's claims under state law, *see* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   October 6, 2023
         New York, New York

                                                  /s/ Laura Taylor Swain
                                                  LAURA TAYLOR SWAIN
                                                  Chief United States District Judge